**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL G. FACKLER, | ) | CASE NO. 3:20-cv-00790 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.,* | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Crystal G. Fackler (Plaintiff), challenges the final decision of Defendant
Andrew Saul, Commissioner of Social Security (Commissioner), denying her applications for
Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and
XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. (Act). This court has
jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States
Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and
Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the
Commissioner's final decision be REVERSED and REMANDED for proceedings consistent
with this opinion.

## I. Procedural History

On August 3, 2012, Plaintiff filed her application for DIB, alleging a disability onset date of March 29, 2010. (R. 12, Transcript (Tr.) 155). The application was denied initially and upon reconsideration. After a hearing, on August 19, 2015, Plaintiff was found not disabled. (Tr. 10-22). The Appeals Council denied Plaintiff's request to review the ALJ's decision. (Tr. 1-3). On March 26, 2018, the District Court for the Northern District of Ohio remanded Ms. Fackler's case for additional vocational expert (VE) testimony and a new decision that complies with Social Security Ruling (SSR) 00-4p, consistent with the Magistrate Judge's recommendation. (Tr. 2228-2252).

Plaintiff participated in a new hearing on February 5, 2019, was represented by counsel, and testified. (Tr. 2189-2222). A VE, Kimberly Eisenhuth, also participated and testified. *Id*. On May 29, 2019, the ALJ found Plaintiff not disabled. (Tr. 2180). On February 21, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 2155-2161). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 14, 15 & 17). Plaintiff asserts four assignments of error, which are each addressed herein. (R. 14, PageID# 2997-98).

## II. Evidence[1]

### A. Relevant Hearing Testimony

At the February 5, 2019 hearing, the VE testified that Plaintiff had no transferable skills

---

[1]  Plaintiff's brief cites no new medical evidence since the prior appeal to this court. As such, the court omits any recitation of the medical evidence. However, pertinent medical evidence is discussed below in the court's analysis where it is germane to the assignments of error.

from her past work as a telephone solicitor and customer order clerk, but that Plaintiff's past

work as a medical secretary "would have transferrable skills to the semi-skilled, sedentary level."

(Tr. 2211). The VE explained that "those skills involve the information handling, gathering. It

involves verbal recording and record keeping, obtaining that type of information and getting it in

a format that can be used. There's also clerical skills involved, such as typing, filing, again

categorizing work." *Id*.

> The ALJ posed the following hypothetical question to the VE:

> All right. My first question -- I would ask, for all hypothetical questions, that you consider a hypothetical individual the Claimant's age and education. At the time of her Date Last Insured, the Claimant was 57 years old and six months. We also have a 12th grade education. For the first hypothetical, I would ask that you consider an individual who can perform less than a full range of light work. This individual can lift/carry, push and pull 20 pounds occasionally and 10 pounds frequently if using both upper extremities, or her left upper extremity alone. However, if using the dominant right upper extremity alone, this individual is limited to lifting 10 pounds, both frequently and occasionally. With this right upper extremity -- whoops -- with this dominant right upper extremity, this individual can also frequently handle and finger. This individual can have occasional exposure to extreme cold, heat, and humidity; and must avoid all exposure to pulmonary irritants such as dust, fumes, odors, gases, perfumes or colognes, and other pulmonary irritants. This individual must be able to wear a filter mask at all times. This individual cannot perform occupations that require frequent verbal communication.

(Tr. 2212). The VE testified that such an individual could not perform any of Plaintiff's past

work due to the prohibition against frequent verbal communication. (Tr. 2213). The ALJ first

asked the VE to identify any other jobs that such an individual could perform with an SVP of 2

or less. (Tr. 2213). The VE identified the following jobs that such an individual could perform:

mail clerk, Dictionary of Occupational Titles (DOT) 209.687-026, light, unskilled with an SVP

of 2 (79,000 jobs nationally); routing clerk, DOT 222.687-022, light, unskilled with an SVP of 2

(40,000 jobs nationally); and, garment sorter, DOT 222.687-014, light, unskilled with an SVP of

2 (60,000 jobs nationally). *Id*.

The ALJ proceeded to inquire that, given the transferable skills identified above, were there any jobs to which those skills would transfer at either the light or sedentary exertional levels. (Tr. 2213-2214). The VE identified the following jobs that such an individual could perform: clerk-typist, DOT 203.362-010, sedentary, semi-skilled with an SVP of 2 (1,000 jobs nationally); medical record clerk, DOT 245.362-010, light, semi-skilled with an SVP of 4 (25,000 of these jobs nationally); and, revival clerk, DOT 219.362-050, sedentary, semi-skilled with an SVP of 4 (7,000 jobs nationally). (Tr. 2214). The VE testified that were no other positions that that fit within the parameters of the hypothetical. *Id*.

The ALJ next inquired as to the impact of reducing the handling and fingering abilities of the hypothetical individual from frequent to occasional. (Tr. 2214). The VE testified that such a limitation would eliminate all of the unskilled jobs previously identified, but that, at the light exertional level, the hypothetical individual could perform the job of a groover and striper operator, DOT 669.685-102, light unskilled with an SVP of 2 (900 jobs nationally). (Tr. 2215). The VE clarified that it was the only job available responsive to the hypothetical at the light exertional level. *Id*. The ALJ then proceeded to ask whether there would be any sedentary jobs available given the hypothetical individual's transferable skills. (Tr. 2215). The VE testified that there were none. (Tr. 2216).

The VE further testified that customary breaks include two 15-minute breaks and a mid-shift break for a meal of approximately 30 minutes. (Tr. 2216). "If an individual were to be off-task for more than 10% of the work day, in addition to those customary breaks, that would not be consistent with competitive employment." *Id*. With respect to absenteeism, at the semi-skilled level, employers tolerate 10 to 12 days per year, while, at the unskilled level, the acceptable

4

tolerance is 8 to 9 days per year. *Id*. The VE stated that studies she has reviewed defined absenteeism as arriving late, needing to leave early, or missing an entire day. *Id*.

In response to the ALJ's inquiry, the VE stated that her testimony had been consistent with the DOT, except for her testimony concerning: (1) the ability to wear a filter mask; (2) the frequent need to communicate verbally; (3) frequent and occasional lifting with the right upper extremity at the light exertional level; and (4) off-task behavior and absenteeism. (Tr. 2216-2217). These areas of testimony were based on the VE's experience. (Tr. 2217).

In response to a question from Plaintiff's counsel, the VE testified that the DOT does not specifically address the use of one's extremities, but that in vocational terms the ability to perform a task less than one-sixth of the workday would be "rarely." (Tr. 2219). The VE explained that if an individual was limited so significantly that they could only handle and/or finger for less than one-sixth of the workday, then that would eliminate all the jobs she had identified. *Id*.

Plaintiff's counsel also inquired with respect to the jobs the VE had identified with transferable skills, and inquired whether those jobs would expose an individual to irritants such as cologne/perfume or cleaning fluids. (Tr. 2220). The VE testified that she had considered such irritants, noting that the Selected Characteristics of Occupations (SCO) accounts for atmospheric conditions such as dust, odors, fumes, gases, and poor ventilation, as well as "other atmospheric conditions that might be present and not specifically defined with the [SCO]. And I considered that when I provided my answers. None of the jobs that I provided included any notations regarding environmental hazards or conditions based on the SCO." (Tr. 2220). Upon further inquiry by counsel, the VE stated that it is possible that an individual would be exposed to coworkers wearing perfume or cologne when performing the jobs identified. (Tr. 2220).

However, the VE testified that she could not state "with any certainty as to how that would affect the jobs or the job numbers. *Id.*

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2015.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 29, 2010 through her date last insured of June 30, 2015 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: obesity; vocal cord dysfunction; chemical hypersensitivity; cervical degenerative disc disease; and right DeQuervain's tendonitis (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: in that the claimant can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently if using both upper extremities or her left upper extremity alone. However, if she is using her dominant right upper extremity, she can lift 10 pounds both frequently and occasionally. With the dominant right upper extremity, she also can frequently handle and finger. She can have occasional exposure to extreme cold, heat, and humidity and must avoid all exposure to pulmonary irritants such as dust, fumes, odors, gases, perfumes/colognes, and other pulmonary irritants. She must be able to wear a filter mask at all times. She cannot perform occupations that require more than occasional verbal communication.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on ***, 1957 and was 57 years old, which is defined as an individual of advanced age, on the date last insured (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569a and 404.1568(d)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from March 29, 2010, the alleged onset date, through June 30, 2015, the date last insured (20 CFR 404.1520(g)).

(Tr. 2168-2171, 2177-2179).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ

failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6ᵗʰ Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

### 1. Transferability of Skills at Step Five

In the first assignment of error, Plaintiff asserts the ALJ's decision is "devoid of any discussion of the complex step five issues at play in this case." (R. 14, PageID# 2998-3000). Plaintiff points out that she turned 55 years of age (an individual of advanced age) over two years before her date last insured. *Id.* Plaintiff contends that, based on the ALJ's own findings, Grid Rule 202.06 of the Listings would direct a finding of disability as of her 55ᵗʰ birthday *unless* she had transferable skills. (*Id. citing* 20 C.F.R. Part 404, Subpt P, App. 2, § 202.07).

Plaintiff contends the ALJ attempted to rely upon the occupations of mail clerk, routing clerk, and garment sorter in finding her not disabled at Step Five, but that her skills would not transfer to any of these occupations based on the VE's testimony. (R. 14, citing Tr. 2212-2217). Thus, Plaintiff concludes that these three occupations are entirely irrelevant to whether she was disabled *after* her 55ᵗʰ birthday.[2] *Id.* Plaintiff, however, acknowledges that the

---

[2] The Commissioner's brief does not challenge Plaintiff's interpretation of the impact of the Grid Rules on this matter once Plaintiff reached 55, but rather contends that Plaintiff had readily transferable skills to occupations such as typist, clerk-typist, and insurance auditing control clerk. (R. 16). Therefore, the Commissioner argues the ALJ properly identified three semi-skilled occupations within Plaintiff's RFC to which Plaintiff's skills are readily transferable. *Id.*

ALJ identified three other occupations that Plaintiff could perform based on the VE's testimony—clerk-typist, medical record clerk, and revival clerk. (R. 14, PageID# 2999). Plaintiff contends the ALJ's decision ignores applicable regulations, which state as follows:

> (c) However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled. Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education.

20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00(c).

Plaintiff asserts the ALJ's decision is entirely devoid of any discussion of how "readily" her skills would transfer. (R. 14, PageID# 3000). Plaintiff takes issue with the ALJ's decision stating that that "the vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." (R. 14, PageID# 3000, *citing* Tr. 2179).

The court has thoroughly reviewed the VE's testimony, set forth in the preceding section. While it is true that the VE did not specifically discuss tools, work processes, or work settings, the court disagrees with Plaintiff that the ALJ's decision blatantly misrepresents the VE's testimony. The ALJ could reasonably infer that the VE, by unambiguously identifying three occupations to which Plaintiff's skills transferred, was testifying that Plaintiff's previous work as a medical secretary was so similar to the jobs identified that she would need to make very little, if any, vocational adjustment. Furthermore, as pointed out by the Commissioner, Social Security

Ruling (SSR) 82-41(2)(d), 1982 SSR LEXIS 34 (1982) states that "a semiskilled general office clerk (administrative clerk), doing light work, ordinarily is equally proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc. These clerical skills may be *readily transferable* to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk." (emphasis added).

Although Plaintiff alleges the ALJ erred by not discussing how "readily" her skills would transfer (R. 14, PageID# 3000), the court declines to find, in the absence of any cited authority, that the term "readily" from Social Security Ruling (SSR) 82-41(2)(d) and the regulations imposes a heightened explanation beyond that reasonably set forth in the ALJ's decision. In addition, as set forth above in the summary of the relevant hearing testimony, the VE unambiguously testified that: (1) Plaintiff acquired transferable skills from her previous work as a medical secretary—clerical skills such as typing, filing, and categorizing (Tr. 2211); and (2) the aforementioned skills are transferable to the jobs of a clerk-typist, medical records clerk, and revival clerk. (Tr. 2213-2214). Another court in this circuit has explained that "[t]he Commissioner's conclusion of transferable skills need only include three findings: (1) identification of the acquired work skills; (2) occupations to which these skills are transferable; and (3) evidence that these occupations exist in significant numbers in the national economy." *Clark v. Colvin*, No. 3:16-cv-01340, 2017 U.S. Dist. LEXIS 6101, at *11-12 (M.D. Tenn. Jan. 17, 2017) (citing SSR 82-41, 1982 SSR LEXIS 34 at *18, 1982 WL 31389, at *7). Here, the VE made all three findings when she identified the acquired skills, identified the occupations to which those skills transfer, and provided evidence that those jobs exist in significant numbers— even taking into account the hypothetical individual's several limitations.

The Sixth Circuit has explained that a matter should not be remanded where a plaintiff cannot establish that "a ruling was anything but harmless error," noting the futility of "sending the case back to the ALJ" where it would not "serve any useful purpose ...." *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (same). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); *accord Mabrey v. Comm'r of Soc. Sec.*, 1:13-cv-555, 2015 U.S. Dist. LEXIS 16244, 2015 WL 556435 at *5 (S.D. Ohio Feb. 10, 2015), *adopted by* 2015 U.S. Dist. LEXIS 38673, 2015 WL 1412205 (Mar. 26, 2015). In that vein, the court declines to remand the matter so the ALJ could merely inquire of the VE whether her unambiguous testimony that the skills were "transferable" is the same as testifying that Plaintiff's skills were "readily transferable."

Finally, to the extent Plaintiff argues that a Ninth Circuit decision compels a different result, the court disagrees. *See Lounsbury, v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006). First, the VE in this case identified three occupations to which Plaintiff's skills transfer, instead of one occupation as occurred in *Lounsbury*, so it is unclear why Plaintiff believes *Lounsbury* applies. In addition, another court within this circuit has rejected the argument advanced by Plaintiff based on her interpretation of *Lounsbury*.

> Absolutely nothing in SSR 83-10, 1983 SSR LEXIS 30 supports plaintiff's argument that the Commissioner cannot satisfy her burden at Step 5 of the sequential analysis unless the VE's testimony identifies a significant number of

> "occupations," rather than a significant number of jobs. The Ninth Circuit's
> decision in *Lounsburry* never established such a rule. Further, *Lounsburry* has
> never been cited in any decision of the United States Court of Appeals for the
> Sixth Circuit. The law in the Sixth Circuit is that a VE's testimony must provide
> evidence of a significant number of jobs, not occupations. *See Kyle v.
> Commissioner*, 609 F.3d at 855; *see also Griffith v. Comm'r of Soc. Sec.*, 582 Fed.
> Appx. 555, 559 (6th Cir. 2014).

*Baumbach v. Comm'r of Soc. Sec.*, No. 1:13-cv-851, 2015 U.S. Dist. LEXIS 2879, at *23 (W.D.

Mich. Jan. 12, 2015). The court further notes that despite the over fourteen-year age of the

*Lounsburry* decision, no court in the Sixth Circuit has ever followed it for the proposition

Plaintiff advocates. The court finds no basis for remand based on Plaintiff's Step Five argument.

### 2. Mental Limitations

At Step Two of the sequential evaluation process, an ALJ must evaluate a claimant's

"symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically

determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If a claimant has a medically

determinable mental impairment, an ALJ "must then rate the degree of functional limitation

resulting from the impairment(s)" with respect to "four broad functional areas." 20 C.F.R. §§

404.1520a(b)(2), (c)(3). The four broad functional areas are also commonly referred to as the

"paragraph B" criteria. *See, e.g., Powell v. Comm'r of Soc. Sec.*, No. 5:15 CV 1775, 2016 U.S.

Dist. LEXIS 131336, at *6 (N.D. Ohio Sep. 26, 2016) (Baughman, M.J.).

The ALJ found as follows: (1) in the functional area of understanding, remembering, or

applying information, Plaintiff had no limitation; (2) in the functional area of interacting with

others, Plaintiff had a mild limitation; (3) in the functional area of concentrating, persisting, or

maintaining pace, Plaintiff had mild limitation; and (4) in the functional area of adapting or

managing oneself, Plaintiff had mild limitation. (Tr. 2169-2170). The ALJ concluded that

"[b]ecause the claimant's medically determinable mental impairments caused no more than

'mild' limitation in any of the functional areas, they were nonsevere." (Tr. 2170, citing 20 C.F.R. § 404.1520a(d)(l)("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.")

Plaintiff, nevertheless, maintains that the ALJ, by finding she had mental limitations at Step Two, was required to account for these limitations when determining the Residual Functional Capacity (RFC).[3] (R. 14, PageID# 3001). As this court understands Plaintiff's argument, because the ALJ had already determined Plaintiff had mild limitations in three broad functional areas at Step Two, the ALJ erred as a matter of law by failing to include specific mental-based limitations in the RFC even if her limitations were mild and resulted in a finding that her mental impairments were non-severe.

It is true that if a claimant has more than one impairment, an ALJ should "consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' …." 20 C.F.R. § 404.1545(a)(2). Nevertheless, courts in this circuit have routinely rejected the same argument now advanced by Plaintiff. *See, e.g.*, *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-cv-818, 2017 U.S. Dist. LEXIS 132987, at *17 (S.D. Ohio Aug. 21, 2017) (finding that the ALJ's determination that claimant had some mild limitations in three functional areas at Step Two "does not require inclusion of mental limitations into the RFC"); *accord Taylor v. Berryhill*, No. 17-11444, 2018 U.S. Dist. LEXIS 138192, at *14 (E.D. Mich. July 5, 2018) ("Indeed, courts in this district have found that mild limitations do

---

[3] The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c).

not require incorporation into an RFC assessment.") (internal quotations omitted). In fact, the Sixth Circuit has held that sometimes even those impairments that are deemed "severe" at Step Two do not always have to be included in the RFC. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (rejecting "the proposition that all impairments deemed 'severe' in step two must be included in the hypothetical.").

Although it is possible that an ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment *may* constitute reversible error where the ALJ's RFC analysis is completely devoid of any discussion concerning a claimant's mental impairments, that is not the case here. While the ALJ's discussion of Plaintiff's mental impairments at Step Four is admittedly not extensive, it is not absent. At Step Four, the ALJ discussed a report from a neuropsychologist, Jerry E. Flexman, Ph. D., noting that: "[a] neuropsychologist noted that the claimant scored 'well above' the cutoff score on testing to evaluate malingering. The doctor noted that the claimant 'tends to overact.' (2F/2). Personality inventory testing 'suggested some difficulties in terms of validity,' and the doctor noted that "secondary gain issues are often noted as well." (Tr. 2175, citing Tr. 411-414; Exh. 2F). Regarding social interaction, the ALJ noted Plaintiff "drove to Findlay daily to help a friend whose husband was dying and after he had passed away." (Tr. 2175). Perhaps most significantly, the ALJ also ascribed "great weight" to the psychological consultative examination of Michael Wuebker, Ph. D. (Tr. 2175, citing Tr. 1548-1554; Exh. 18F). Plaintiff has presented no argument suggesting that the RFC was inconsistent with the functional assessment set forth by Dr. Wuebker. Finally, the ALJ acknowledged the GAF score contained in Dr. Wuebker's assessment, but ascribed it little weight, explaining that it was "not probative of overall longitudinal functional capacity," as well as "out of proportion with the recitation of the claimant's activities and social functioning." (Tr. 2177).

Given the above discussion of pertinent portions of the mental health related medical evidence, the court cannot conclude that the ALJ improperly ignored the effects of Plaintiff's mental impairments when arriving at an RFC determination. While there may be pertinent mental health related pieces of evidence that were not explicitly discussed, "the ALJ, however, is not required to directly address 'every piece of evidence submitted by a party' or to 'make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.'" *Hardiman v. Comm'r of Soc. Sec.*, No. 3:15-cv-1259, 2017 U.S. Dist. LEXIS 56794, at *10-11 (N.D. Ohio Apr. 13, 2017) (Helmick, J.) (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 507-08 (6th Cir. 2006)). Therefore, the court finds the second assignment of error without merit.

**3. Weight Ascribed to Dr. Smith's Opinion**

In the third assignment of error, Plaintiff argues the ALJ erred by rejecting the opinion of her treating physician, Christopher Smith, D.O., solely based on the erroneous assumption that Dr. Smith was a chiropractor (D.C.) rather than a Doctor of Osteopathic Medicine (D.O.). (R. 14, PageID# 3005-3008).

On March 18, 2015, Dr. Smith completed a checklist-style RFC medical source questionnaire. (Tr. 2010-2011). Dr. Smith assessed no standing or walking restrictions, and indicated Plaintiff's pain and fatigue levels were mild. *Id*. Dr. Smith indicated that Plaintiff could lift/carry ten pounds with her right hand and had no left-handed restrictions. (Tr. 2010). Plaintiff could continuously bend, squat, crawl, climb, and reach. *Id*. He indicated Plaintiff could not tolerate any exposure to environmental pollutants such as dust, fumes, and smoke. *Id*. Finally, most relevant to this case, the questionnaire inquired as to Plaintiff's ability to perform

repetitive[4] hand actions in the following categories: "Simple Grasping," "Pushing & Pulling of Arm Controls," and "Fine Manipulation." (Tr. 2010). The form's answer spaces with respect to these hand-based categories only provided for "Yes" or "No" responses, and did not set forth limitations in vocationally relevant terms such frequently, occasionally, or continuously. *Id*. Dr. Smith checked "no" twice, once with respect to simple grasping with the right hand and once for fine manipulation with the right hand. *Id*.

The Commissioner acknowledges the ALJ was incorrect when he described Dr. Smith as a chiropractor. (R. 16, PageID# 3037). However, the Commissioner asserts the ALJ's RFC incorporated many of the restrictions assessed by Dr. Smith above, and further argues that the ALJ gave good reasons for not accepting the manipulative restrictions assessed by Dr. Smith. (R. 14, PageID# 3034-3037).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words,

---

[4] *See, e.g., LeFevers v. Comm'r of Soc. Sec.*, 476 Fed. App'x 608, 611 (6th Cir. 2012) (finding no error where the ALJ omitted a medical source opinion prohibiting "repetitive," and explaining that "[i]n ordinary nomenclature, a prohibition on 'repetitive' lifting does not preclude a capacity for 'frequent' lifting [and therefore] … [n]o reversible inconsistency exists"); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 U.S. Dist. LEXIS 106631, at *22 (N.D. Ohio June 11, 2018) (noting Plaintiff had cited no authority suggesting that the terms "prolonged" or "repetitive" had "any fixed meaning in the social security context"); *Wudzinski v. Comm'r of Soc. Sec.*, No. 4:15-cv-11062, 2016 U.S. Dist. LEXIS 120173, at *30 (E.D. Mich. July 29, 2016) (agreeing that a medical opinion that the claimant was "limited in his ability to perform repetitive movements with his right hand and upper extremity" was "vague" and did not meet the function-by-function criteria of SSR 96-8p, 1996 SSR LEXIS 5); *Demoines v. Comm'r of Soc. Sec.*, No. 2:17-cv-13486, 2018 U.S. Dist. LEXIS 196223, at *20 (E.D. Mich. July 10, 2018) (finding that the phrase "no repetitive use" … "has an indeterminate meaning for vocational analysis").

"[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion

'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not

inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion

controlling weight, then the ALJ must give good reasons that are "sufficiently specific to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social

Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is

"imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th

Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases,

particularly in situations where a claimant knows that [her] physician has deemed [her] disabled

and therefore might be especially bewildered when told by an administrative bureaucracy that

she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544

(*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc.*

*Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ

applies the treating physician rule and permits meaningful review of the ALJ's application of the

rule.") (Polster, J.)

It is well-established, however, that administrative law judges may not make medical

judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges,

including administrative law judges of the Social Security Administration, must be careful not to

succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th

Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an

ALJ does not improperly assume the role of a medical expert by assessing the medical and non-

medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009).

The decision addressed Dr. Smith's opinion as follows:

> The claimant's treating chiropractor, Chris Smith, D.C. provided a medical source statement dated March 18, 2015. (30F). He opined that the claimant could sit, stand, and walk for eight hours per day; she was only limited in lifting and carrying on her right side to 10 pounds but had no restrictions on her left; and she had no postural limitations. Dr. Smith further opined that the claimant could tolerate no exposure to environmental pollutants. The claimant's pain and fatigue level was rated as mild. (*Id.*). Chiropractor's opinions are not "opinions" of a "medical source," as defined in 20 CFR 404.1502 and 404.1527(a)(2), nor are they those of an "acceptable medical source," as defined in 20 CFR 404.1513. Because a chiropractor does not qualify under either of these definitions, their opinions are, pursuant to 20 CFR 404.1527, not "medical opinions." Given this, a chiropractor's opinion is considered only to the extent that it helps understand how an impairment affects the ability to work. See 20 CFR 404.1514(e). Accordingly, some weight is given to this opinion as it supports the claimant could perform work at the light exertional level. However, **there is no evidence to support that the claimant could not perform fine manipulation and simple grasping on her right hand/arm**. Dr. Onamusi stated she was able to use her hands for fine coordination and manipulative tasks. (17F). Dr. Shah stated she was limited with extension, flexion, and strength of her right wrist, but he did not state she was unable to perform movements with her right hand/arm. (31F).

(Tr. 2176) (emphasis added).

Plaintiff argues the ALJ erred by failing to credit the manipulative limitations assessed by Dr. Smith—which he characterizes as only occasional handling and fingering with the right hand. (R. 14, PageID# 3008). Plaintiff asserts that such error was not harmless, because all three jobs relied upon by the ALJ required frequent handling and fingering.[5] (R. 17, PageID# 3046).

---

[5] As indicated above, the form completed by Dr. Smith did not delineate manipulative limitations using the vocationally relevant terms of occasionally, frequently, continuously, or never. (Tr. 2010). Although it would be unreasonable to interpret the form completed by Dr. Smith as assessing no restrictions with regards to Plaintiff's use of her right hand, it is unclear why the ALJ appears to have construed the form as assessing a complete prohibition against any fine manipulation or grasping with the right hand, or why Plaintiff construes the form as

While it is true the ALJ misidentified Dr. Smith as a chiropractor, the ALJ, nevertheless, provides two reasons for discounting the weight accorded to Dr. Smith's opinion: (1) a complete dearth of evidence to support a prohibition against fine manipulation and simple grasping with the right hand; and (2) the inconsistency of said prohibition with the consultative examining opinions of Dr. Onamusi and Dr. Shah. (Tr. 2177).

Given that the opinions of treating medical source opinions are generally accorded greater weight than non-treating consultative opinions, the court would agree that the second reason, on its own, would not provide a "good reason" for discounting Dr. Smith's opinion. Where the reason given for rejecting a treating source's opinion is solely that it conflicts with a non-treating source's opinion, the treating physician rule has been violated. *See, e.g., Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding that an ALJ may not base the rejection of a treating source's opinion upon its inconsistency with the opinions of non-examining State agency consultants, as that would turn the treating physician rule on its head); *see also Brewer v. Astrue*, No. 1:10-CV-01224, 2011 U.S. Dist. LEXIS 64262, 2011 WL 2461341, at *7 (N.D. Ohio June 17, 2011) (White, M.J.).

Here, however, the ALJ's decision to discount Dr. Smith's opinion was *not* based solely on an apparent conflict with the non-treating consultative examiners' opinions. Rather, the ALJ expressly found that "there is no evidence to support that the claimant could not perform fine manipulation and simple grasping on her right hand/arm." (Tr. 2177). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of

---

assessing a restriction to occasional grasping or fine manipulation. (R. 17, PageID# 3046).

the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints); *Landuyt v. Berry Hill*, 2018 U.S. Dist. LEXIS 51239, *15 (N.D. Iowa Mar. 28, 2018) ("Inconsistencies with the treatment notes provide a good reason to not give the treating physician's opinion controlling weight."); s*ee also Jung v. Comm'r of Soc. Sec.*, No. 1:11-CV-34, 2012 WL 346663, at *14 (S.D. Ohio Feb. 2, 2012) (finding the ALJ gave "good reasons" for discounting a treating physician's opinions "by citing their internal and external inconsistencies and contradictions"), *report and recommendation adopted*, 2012 WL 628459 (S.D. Ohio Feb. 27, 2012).

Neither Plaintiff's brief nor her reply identify any evidence of record that undermines the ALJ's conclusion that there is simply no evidence in the record to support Dr. Smith's manipulative restrictions of the right hand. It is true, that the decision found Plaintiff's right-handed DeQuervain's tendonitis constituted a severe impairment. (Tr. 2169). However, although an impairment is severe, it is not necessarily debilitating. A diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *cf. Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits").

The tendonitis diagnosis does not axiomatically establish a level of limitation greater than

the frequent handling and fingering restrictions contained in the RFC.[6] Nor does the diagnosis confirm the rather vague right-hand limitations set forth in the questionnaire completed by Dr. Smith.[7] Because the ALJ gave sufficiently good reasons for giving limited weight to the opinion of Dr. Smith, Plaintiff's contention that the ALJ erred in his assessment of Dr. Smith's opinion is not well taken.

### 4. Reliability of the VE's Testimony

In her fourth assignment of error, Plaintiff asserts the VE's testimony was flawed. (R. 14, PageID# 3008). Plaintiff points out that the RFC finding required that the hypothetical individual "avoid all exposure to pulmonary irritants such as dust, fumes, odors, gases, perfumes/colognes, and other pulmonary irritants." (R. 14, PageID# 3008-3009, citing Tr. 2171). While the VE testified that the SCO allowed the hypothetical individual to perform the jobs identified, the VE, as set forth above, admitted that it is possible that an individual would be exposed to coworkers wearing perfume or cologne when performing the jobs identified. (Tr. 2220). The VE further testified that she could not state "with any certainty as to how that would affect the jobs or the job numbers." *Id*. Therefore, Plaintiff asserts the Commissioner has failed to carry his burden at Step Five of showing that Plaintiff retains the ability to perform a substantial number of jobs in the national economy. (R. 14, PageID# 3008-3009).

---

[6] A finding that an activity can be performed frequently should not be misconstrued as a finding that an individual has no limitations in that regard. Pursuant to *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C*, an activity that is performed "frequently" exists from as little as 1/3 of the time up to (but not exceeding) 2/3 of the workday. By contrast, an activity performed "constantly" exists 2/3 of the workday or more. *Id*.

[7] Notably, Dr. Smith's opinion sets forth no diagnoses upon which Plaintiff's right-hand limitations are based, save for a notation that Plaintiff has "limited motion right forearm." (Tr. 2011).

At the fifth and final step of the disability analysis, if a claimant cannot perform her past relevant work, it must be determined whether the claimant can adjust to other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding in this regard must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)).

Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The Commissioner contends that Plaintiff's argument is "speculative." (R. 16, PageID#

3038). The Commissioner cites a district court case from Oklahoma, wherein the court observed that "Claimant also engages in rank speculation in asserting that the environmental restrictions noted by the vocational expert–office environment, no temperature extremes, no dust or fumes– would preclude these jobs because '[c]ustomers and co-workers both wear perfume, cologne, body sprays, hairspray, deodorant, etc.'" (R. 15, PageID# 3038, citing *Patterson v. Berryhill*, No. CIV-16-47-KEW, 2017 WL 4314213, at *3 (E.D. Ok. Sept. 28, 2017)). The Commissioner ignores a critical distinction between this case and *Patterson*. In the latter, the ALJ's RFC limited the claimant to work in an "office-like environment." *Patterson*, 2017 WL 4314213, at *3. The district court concluded the plaintiff engaged in "rank speculation," because "the [environmental] assumptions are not contained in the record nor were they specified by the vocational expert." *Id.* at *3. Here, it was the ALJ who expressly included a prohibition against "all exposure to pulmonary irritants such as … perfumes/colognes" into the RFC. Therefore, the limitation is not rank speculation but a limitation mandated by the RFC finding. Similarly, in *Cooper v. Colvin*, 2013 WL 5350624, at *6 (E.D. Ky. Sept. 23, 2013), the ALJ's RFC required that the Plaintiff "avoid all exposure to dust, fumes, odors, and gases." The RFC did not include an express prohibition against perfumes and colognes as the ALJ did herein. The *Cooper* court, however, did note that the VE never testified that "Plaintiff could never work around perfume," and conceded that an employer could "theoretically, ban perfume in the workplace." 2013 WL 5350624, at *6.

Because the ALJ's RFC mandated a prohibition against perfumes and colognes, the court cannot conclude that the VE's somewhat contradictory testimony satisfied the Commissioner's burden at Step Five. While testifying that the SCO permitted an individual with the assessed RFC, including the environmental limitations, to perform the three jobs identified (testimony that

appears on its face to satisfy the Step Five burden), the VE also conceded it was possible that the hypothetical individual could encounter coworkers wearing perfume or cologne when performing the jobs identified and she could not testify "with any certainty as to how that would affect the jobs or the job numbers." (Tr. 2220). The VE's testimony, without further explanation, casts some doubt on whether Plaintiff could perform the only three jobs responsive to the RFC. As such, the court finds that a remand is necessary to clarify the impact on the availability of jobs for someone with all the restrictions the ALJ assessed, including the prohibition against exposure to perfumes and colognes.

Finally, while a remand is warranted, the court recommends declining Plaintiff's request to bypass further administrative proceedings and judicially award benefits, as it cannot conclude with any reasonable certainty that an award of benefits is a foregone conclusion upon remand.[8] While the court understands Plaintiff has twice appealed the Commissioner's decisions to this court and has been waiting for an extended period of time for the final disposition of this matter, that alone does not provide a basis to award benefits.

### VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*

Date: July 16, 2021

David A. Ruiz
United States Magistrate Judge

---

[8] Though not involving the jobs identified herein, the court is aware of at least one appellate decision wherein a need "to avoid exposure to chemical fumes, *perfumes*, and other such types of pulmonary irritants," was not entirely work preclusive and did not preclude work as a gate guard based upon a VE's testimony. *Tollett v. Barnhart*, 60 F. App'x 263, 266 (10th Cir. 2003).

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F. 3d 520, 530-31 (6th Cir. 2019).